David Pivtorak (Cal. Bar No. 255943)
**THE PIVTORAK LAW FIRM**
611 Wilshire Boulevard, Suite 911
Los Angeles, CA 90017
Telephone: (213) 291-9130
Facsimile:  (877) 748-4529
Email: david@piv4law.com

Attorneys for Plaintiff,
RAY SHELTON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY SHELTON,<br><br>              Plaintiff(s),<br><br>       vs.<br><br>VIVIAN EKCHIAN, individually, and in her official capacity as Superintendent of the Glendale Unified School District; DARNEIKA WATSON, individually, and in her official capacity as Chief Human Resources and Operations Officer and Interim Superintendent; KATHLEEN CROSS, individually, and in her official capacity as a Board of Education member; INGRID GUNNELL, individually, and in her official capacity as a Board of Education member; SHANT SAHAKIAN, individually, and in her official capacity as a Board of Education member; JENNIFER FREEMON, individually, and in her official capacity as a Board of Education member; NAYIRI NAHABEDIAN, individually, and in her official capacity as a Board of Education member; KRISTINE TONOLI, individually, and in her official capacity as Principal; and DOES 1-50, inclusive;<br><br>              Defendants. | CASE NO.<br><br>COMPLAINT FOR INJUNCTIVE/DECLARATORY RELIEF AND DAMAGES:<br><br>**Violations of 42 U.S.C. § 1983 [First and Fourteenth Amendments]**<br><br>**<u>Jury Trial Demanded</u>** |

## STATEMENT OF JURISDICTION AND VENUE

1.     This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343 as Plaintiff alleges that Defendants are violating 42 U.S.C. § 1983 by depriving him, under color of state law, of rights, privileges, and immunities secured by the First Amendment to the United States Constitution and incorporated against Defendants by the Fourteenth Amendment.

2.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) as a substantial part of the events and omissions giving rise to the claims alleged herein occurred and are occurring in this district.

## INTRODUCTION

3.     "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

4.     This premise has been the law of the land for the better part of the last century.

5.     In recent years, however, certain political activists and their ideologue supporters in government, have been attempting to chip away at this principle by arguing that speech—and even silence itself—is "violence."

6.     The plaintiff in this case, Ray Shelton, is the victim of these government actors.

7.     Mr. Shelton was a fifth-grade teacher employed by the Glendale Unified School District who disagreed with several policies being promulgated by the district. Mr. Shelton believed that the policies in question jeopardized the health and safety of children and also required members of the school community to subscribe to a political orthodoxy that violated their deeply held personal and religious beliefs.

8.     On April 18, 2023 Mr. Shelton attended a board of education meeting as a private citizen, and member of the community, and spoke out regarding the district's policies, which are a matter of public concern.

9.     The very next day Mr. Shelton was removed from his classroom and placed on leave by defendants. His school's principal disseminated an email to the entire school community falsely accusing Mr. Shelton of hate speech, among other disparaging remarks.

10.    As a result of Defendants' retaliatory, unconstitutional actions against Mr. Shelton, he was never allowed to return to his classroom or watch his students graduate, something he looked forward to every year.

11.    Mr. Shelton suffered personally and professionally because of the damage inflicted on him by Defendants' punitive actions.

12.    He filed this action to restore his name and to vindicate not only his rights, but the right of all Americans, to speak freely without being burdened by the oppressive yoke of government censorship.

## PARTIES

13.    Plaintiff Ray Shelton ("Plaintiff" or "Shelton") was employed, at all relevant times herein, as a fifth-grade teacher at the Mark Keppel Visual and Performing Arts Elementary School ("Mark Keppel"), a public school under the authority and control of the Glendale Unified School District ("GUSD").

14.    Defendant Kathleen Cross ("Cross") was, at all relevant times herein, a member of the GUSD Board of Education.

15.    Defendant Ingrid Gunnell ("Gunnell") was, at all relevant times herein, a member of the GUSD Board of Education.

16.    Defendant Shant Sahakian ("Sahakian") was, at all relevant times herein, a member of the GUSD Board of Education.

17.     Defendant Jennifer Freemon ("Freemon") was, at all relevant times herein, a member of the GUSD Board of Education.

18.     Defendant Nayiri Nahabedian ("Nahabedian") was, at all relevant times herein, a member of the GUSD Board of Education.

19.     The GUSD Board of Education (the "School Board" or "Board") is a public body that governs public schools in Glendale, California and is the third largest school district in Los Angeles County.

20.     The School Board has final policymaking and decision-making authority for rules, regulations, and decisions that govern school personnel, including the actions challenged herein.

21.     The School Board has acquiesced in, sanctioned, and supported, and continues to acquiesce in, sanction, and support the actions of the other Defendants in enforcing the policies and procedures governing GUSD employees, specifically in the punitive measures taken against Mr. Shelton in retaliation for the exercise of his First Amendment rights.

22.     The School Board refused to instruct GUSD personnel, including other Defendants, to rescind the disciplinary measures taken against Mr. Shelton or otherwise modify district policies to comply with constitutional mandates.

23.     Defendant Vivian Ekchian ("Ekchian") was, at all relevant times herein, the superintendent of GUSD.

24.     As superintendent, Defendant Ekchian was GUSD's chief executive officer whose powers included oversight and control of the district.

25.     As superintendent, Defendant Ekchian is and was aware of the retaliatory and unconstitutional actions taken against Mr. Shelton and has refused to instruct GUSD personnel, including other Defendants, to rescind the disciplinary

measures taken against Mr. Shelton or otherwise modify district policies to comply with constitutional mandates.

26.     As superintendent, Defendant Ekchian has a duty to ensure that disciplinary actions against personnel are applied in a consistent and lawful manner. Defendant Ekchian has confirmed, sanctioned, and ratified the other Defendants' discriminatory, retaliatory, and unconstitutional discipline against Mr. Shelton.

27.     Defendant Darneika Watson ("Watson") was, at all relevant times herein, the Chief Human Resources and Operations Officer of GUSD. She currently serves as interim superintendent of GUSD.

28.     Defendant Watson possessed the authority and responsibility for governing and regulating GUSD employees.

29.     Defendant Watson exercised her authority to punish Mr. Shelton for exercising his First Amendment rights.

30.     Defendant Kristine Tonoli ("Tonoli") was, at all relevant times herein, the principal of Mark Keppel.

31.     Defendant Tonoli possesses the authority and responsibility for governing and regulating Mark Keppel teachers, including Mr. Shelton.

32.     Defendant Tonoli exercised her authority to punish Mr. Shelton for exercising his First Amendment rights.

33.     Plaintiff is not aware of the true names and capacities of the defendants sued as DOES 1-50, inclusive, and therefore sues these defendants by such fictitious names. Each of these fictitiously named defendants is responsible in some manner for the activities alleged in this complaint. Plaintiff will amend this complaint to add the true names of the fictitiously named defendants once they are discovered.

34.     Plaintiff alleges, on information and belief, that at all times relevant hereto each of the defendants, including each DOE, was the agent, principal, servant,

master, employee, employer, joint-venturer, partner, successor-in-interest, and/or coconspirator of each other defendant and was at all said times acting in the full course and scope of said agency, service, employment, joint venture, concert of action, partnership, successorship, or conspiracy, and that each defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this complaint and is itself liable for the conduct of the named defendants herein.

## FACTUAL ALLEGATIONS

35.    Plaintiff Ray Shelton was a venerated fifth-grade teacher at the Mark Keppel, which is part of GUSD, for 25 years.

36.    He was universally beloved by his students and their parents, and well-respected by his colleagues.

37.    Over the course of his career, Mr. Shelton earned many professional awards. His unique and engaging approach to teaching earned him recognition from the community and in the press. Most recently, in March 2023, he was honored with the "Golden Oak Service Award," California's most prestigious PTA award,.

38.    Mr. Shelton took particular pride in teaching biology and science, which he had a keen personal interest in.

39.    One of the basic foundational lessons in biology Mr. Shelton taught his students is that the human species has two sexes: Male and female.

40.    This is not only an accepted scientific fact but a deeply held personal belief for Mr. Shelton.

41.    Recently, however, this fact has come under attack from politically-motivated activists who believe that there are more than two sexes and claim that the idea of biological sex itself is a social construct.

42.    Over the last several years these activist-driven ideas have started creeping into official GUSD policy.

43.    Some of these policies include, but are not limited to, keeping a secret file on students who have decided to use pronouns that do not correspond to their natal sex and a "preferred" cross-sex name which is different from their given one; permitting natal males, who "identify" as the opposite sex, to use girls' locker rooms and bathrooms at school; mandating that teachers and students use "preferred pronouns" regardless of natal sex, even if this violates the users' deeply held religious or personal beliefs; and teaching elementary school children about various sexual positions. More importantly, it is GUSD's policy to conceal all of this information from parents.

44.    Mr. Shelton believes, based on scientific evidence, that children do not have a fully developed capacity to understand the long-term consequences of their decisions, especially when it comes to sex and identity.

45.    Mr. Shelton believes that parents must be intimately involved in any serious decisions involving their children, especially those with permanent physical or psychological implications.

46.    Mr. Shelton believes that parents also have a fundamental right to control the upbringing and education of their children.

47.    Mr. Shelton wants to protect children from making potentially irreversible and life-changing decisions that they may later regret. Mr. Shelton believes that, because of the complex social, spiritual, and psychological issues involved in changing one's sex—especially when paired with chemical hormone and surgical interventions—children should not be encouraged to undertake social or medical transition due to their inability to assess the long-term consequences. This is

especially true when these decisions are actively concealed from parents or otherwise made without parental involvement.

48.     Mr. Shelton believes that educators have free speech rights that may be impacted by educational policy relating to sex identity.

49.     Mr. Shelton believes that every human being deserves to be treated with dignity and respect. However, Mr. Shelton believes that referring to a child by a pronoun that does not correspond to their natal sex does not constitute dignity or respect; in fact, Mr. Shelton believes, this is harmful both to the child and the speaker, because it is untrue.

50.     On April 18, 2023 Mr. Shelton attended a GUSD Board of Education meeting. Mr. Shelton attended as a private citizen and not in any representative capacity as a GUSD employee.

51.     During the public comment portion of the meeting, Mr. Shelton gave a short speech speaking in defense of scientific, biological fact and in opposition to some of GUSD's newly-adopted, politically faddish policies.

52.     Mr. Shelton expressed his sincere personal belief, based in scientific fact, that these GUSD policies were causing mental, physical, and emotional harm to the children who were being experimented on by adults pursuing a political agenda.

53.     Mr. Shelton's speech was given as a private citizen on a matter of public concern.

54.     Mr. Shelton's speech did not violate any GUSD School Board policies.

55.     Mr. Shelton's participation in the School Board meeting did not interfere with the performance of his duties as a Mark Keppel educator.

56.     Mr. Shelton's participation in the School Board meeting did not disrupt any education activities at Mark Keppel.

57.     When Mr. Shelton arrived to teach his class the morning after the meeting, Defendant Tonoli pulled Mr. Shelton out of his class and directed him to Tonoli's office, where a School Board administrator sat waiting.

58.     Defendants instructed Mr. Shelton that he was under investigation for unspecified "misconduct" and was being put on administrative leave. They also handed him a letter from Defendant Watson to that effect.

59.     Later that day, Defendant Tonoli published an email to the entire Mark Keppel community accusing Mr. Shelton of "hate speech" at the school board meeting and admitting to removing him from campus.

60.     Defendant Tonoli admitted that Defendants' conduct against Mr. Shelton was in direct retaliation for the personal views he expressed at the school board meeting.

61.     Defendants never allowed Mr. Shelton to return to his classroom. Defendants also barred Mr. Shelton from attending his students' fifth-grade graduation ceremony—something that he deeply cherished every year to commemorate the achievement of his students and to be able to celebrate with them and their families before they moved on to middle school.

62.     For Mr. Shelton, this was a devastating loss.

63.     By placing Mr. Shelton on leave, Defendants attacked his credibility as an educator and sullied his personal and professional reputation.

64.     As a consequence of the administrative leave, Mr. Shelton lost opportunities to develop his skills as an educator and to mentor his students.

65.     Defendants, through their retaliatory actions, also sent a message to all GUSD employees that speaking on matters of public concern that conflict with District heterodoxy will be met with punishment, including suspension and termination.

66.     Defendants' actions were taken with the intent to chill Mr. Shelton's speech, as well as that of other employees who disagree with GUSD's radical, child-harming policies. Defendants' actions were reasonably likely to deter a person in Mr. Shelton's position from speaking out against these policies.

67.     Notably, GUSD employees who have spoken publicly in favor of these policies have never been punished or disciplined in any way.

68.     Punishing Mr. Shelton for communicating his views on GUSD's policies does not serve any legitimate or compelling state interest and is not narrowly tailored to serve any such interests.

## CAUSES OF ACTION

### COUNT 1
### FIRST AMENDMENT RIGHT OF FREE SPEECH AND PETITION (42 U.S.C. 1983)
### (Viewpoint Discrimination)

69.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

70.     Mr. Shelton's speech regarding political and social issues, including his speech about Glendale School District policies, constitute speech and petition on matters of public concern protected by the First Amendment from viewpoint discrimination.

71.     The First Amendment also protects Mr. Shelton's right to present his views in the ways that he chooses, including his choice of words and images, regardless of whether others would find his speech disagreeable or offensive.

72.     By punishing Mr. Shelton for publicly expressing his views Defendants, under color of state law, violated and continue to violate Mr. Shelton's rights of free speech and petition under the First Amendment to the United States Constitution.

73.     Accordingly, Defendants injured and continue to injure Mr. Shelton in violation of 42 U.S.C. § 1983.

74.     As a further direct and proximate result of said conduct, Mr. Shelton suffered extreme emotional distress, shame, intimidation, humiliation, indignation, embarrassment, and fear.

75.     Plaintiff is entitled to declaratory and injunctive relief as well as damages and attorney fees and expenses under 42 U.S.C. § 1988.

76.     Defendants' conduct identified in this complaint has been intentional, deliberate, willful, systematic, and conducted in callous disregard of the federally protected rights of Plaintiff. As a result, Plaintiff is entitled to punitive damages.

## COUNT 2
## FIRST AMENDMENT RIGHT OF FREE SPEECH AND PETITION (42 U.S.C. 1983)
## (Retaliation)

77.     Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

78.     By punishing and threatening to punish Mr. Shelton for expressing his views regarding GUSD's gender-identity policies, Defendants have retaliated and are retaliating against Plaintiff for exercising his First Amendment rights.

79.     When Mr. Shelton communicated his views at the GUSD school board meeting he was speaking as a private citizen on a matter of public concern and engaging in constitutionally-protected speech.

80.     By punishing Mr. Shelton for publicly expressing his views Defendants, under color of state law, violated and continue to violate Mr. Shelton's rights of free speech and petition under the First Amendment to the United States Constitution.

81.     Defendants' retaliatory actions against Mr. Shelton would deter a person of ordinary firmness from exercising his right of free speech in the future.

82.    Mr. Shelton's engagement in constitutionally-protected speech was a substantial motivating factor for Defendants' punitive actions against him.

83.    Accordingly, Defendants injured and continue to injure Mr. Shelton in violation of 42 U.S.C. § 1983.

84.    As a further direct and proximate result of said conduct, Mr. Shelton suffered extreme emotional distress, shame, intimidation, humiliation, indignation, embarrassment, and fear.

85.    Plaintiff is entitled to declaratory and injunctive relief as well as damages and attorney fees and expenses under 42 U.S.C. § 1988.

86.    Defendants' conduct identified in this complaint has been intentional, deliberate, willful, systematic, and conducted in callous disregard of the federally protected rights of Plaintiff. As a result, Plaintiff is entitled to punitive damages.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.    General and compensatory damages for Plaintiff for violations of his federal constitutional and statutory rights, and emotional distress, all according to proof.

B.    Nominal damages, according to proof.

C.    Punitive damages, according to proof.

D.    A declaration that Defendants, through the actions, omissions, policies, practices, and/or procedures complained of, violated 42 U.S.C. §§ 1983.

E.    Preliminary and permanent injunctive relief:

1. Preliminary and permanent injunctive relief requiring Defendants, their successors in office, agents, employees, and assigns, and all

persons acting in concert with them, to (1) rescind any disciplinary action taken against Plaintiff, (2) remove any reference of discipline and any other actions taken against Plaintiff as a result of his protected speech from his personnel file, and (3) refrain from any future retaliation.

F.     Attorneys' fees, costs, interest, and expenses pursuant to 42 U.S.C. §1988 and other relevant statutes.

G.     And such other and further relief as the Court may deem proper.

Dated: December 13, 2023                    THE PIVTORAK LAW FIRM

                                       By: /s/   David Pivtorak
                                           David Pivtorak
                                           Attorney for Plaintiff,
                                           RAY SHELTON